IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLP ASSOCIATES, LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 20-1409 |
| SENECA INS. CO., INC., | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**I.    INTRODUCTION**

Presently before the Court is a Motion for Preliminary Injunction filed by Plaintiff CLP Associates, LLC in this diversity action against Defendant Seneca Insurance Company, Inc., Defendant's Response in opposition thereto, and Plaintiff's Reply. (Docket Nos. 1-2, 6, 7). After careful consideration of the parties' arguments and the evidence of record in light of the prevailing legal standards, and for the following reasons, Plaintiff's Motion is denied.

**II.    PROCEDURAL HISTORY**

Plaintiff commenced this action by filing a Complaint in the Court of Common Pleas of Jefferson County, Pennsylvania alleging claims against Defendant for breach of contract and bad faith arising out of an insurance coverage dispute. (*See generally* Docket No. 1-1). As alleged in the Complaint, Plaintiff owns the Spirit Building, which it claims is a "historically significant" building in downtown Punxsutawney, Pennsylvania that houses both apartments for elderly residents and retail space. (*Id.*, ¶ 2). In February 2019, the Spirit Building's roof and parapet

1

walls sustained wind damage for which Plaintiff submitted an insurance claim to Defendant under Commercial Protection Policy No. CMP 4901523 (the "Policy").  (*Id.,* ¶¶ 3, 15; Ex. A).   Plaintiff alleges that Defendant made an initial payment under the Policy and agreed to pay Plaintiff's construction contractors as they repaired the damage, but now refuses to make additional payments.  (*Id.*, ¶¶ 4, 5).  Plaintiff claims that it does not have sufficient assets to pay its contractors to finish repairing the Spirit Building and was relying on Defendant to make payments under the Policy so that the repairs could be completed in a safe and timely manner.  (*Id.*, ¶ 38).  According to Plaintiff, the Policy requires Defendant to pay for property damage to the Spirit Building on a replacement cost basis, thus Defendant's refusal to pay Plaintiff's contractors as repairs are completed is a breach of the Policy.  (*Id.* ¶¶ 48, 49).

      Contemporaneous with the Complaint in state court, Plaintiff filed its Motion for Preliminary Injunction seeking payment from Defendant by September 21, 2020 for overdue repair invoices in the amount of $88,941.02, so that Plaintiff's scaffolding contractor would not act on its purported threat to "red tag" the worksite and stop work on the project.  (Docket Nos. 1-1, ¶¶ 7, 39; 1-2 at 2, 4).  Plaintiff maintains that Defendant's delayed payment prevents completion of the repairs and exposes it and members of the public to "significant *risks* of irreparable harm" as follows: (1) the risk of death or serious injury given that sections of the damaged building recently fell to the sidewalk and street; (2) the risk of property damage to surrounding buildings caused by falling debris; and (3) the risk of additional property damage to the roof and parapet walls of the Spirit Building if repairs are not completed before winter.  (Docket No. 1-2 at 1-2, 4, 5) (emphasis added).  Plaintiff also complains that, absent injunctive relief requiring Defendant to immediately pay, it "cannot afford to complete the repairs" and it "risk[s] losing [its] entire investment in the building."  (*Id.* at 1, 5).

2

On September 17, 2020, Defendant timely removed the action to this Court pursuant to 28 U.S.C. § 1441. (Docket No. 1). This Court held a telephonic status conference on September 21, 2020, during which counsel for the parties provided an overview of their respective positions concerning the case, including Plaintiff's pending Motion for Preliminary Injunction. (Docket No. 3). The Court ordered briefing on the matter and indicated that it would determine whether a further status conference or hearing is required after briefing was complete. (*Id.*).

On September 25, 2020, Defendant filed is Response opposing Plaintiff's Motion for injunctive relief. (Docket No. 6). Defendant represents that it has made certain payments under the Policy "that are intended to address covered damage to the roof and the parapet walls of the [Spirit Building;]" however, disagreements have arisen concerning the scope and extent of the covered loss, the repair work undertaken to address same, the cost of that work and the amount of available insurance coverage under the Policy. (*Id.* at 2). According to Defendant, Plaintiff's concerns are "purely financial" and Plaintiff has failed to set forth sufficient bases to support the likelihood of success on the merits or irreparable injury. (*Id.* at 7). To that end, Defendant argues that Plaintiff has failed to identify a single instance of either personal injury or property damage caused by any alleged falling debris and has done nothing more than baldly speculate that irreparable injury will occur if it is not immediately paid the money it claims it is owed under the Policy. (*Id.* at 3, 7).

In Reply filed on September 30, 2020, Plaintiff maintains that "this situation does not present financial issues that can be quantified in dollars and cents," repeating that public safety and property damage risks pose irreparable harm which warrant injunctive relief. (Docket No. 7 at 4).

After reviewing the record, the Court finds no need for a hearing because Plaintiff "has not presented a colorable factual basis to support . . . the contention of irreparable harm" in this

insurance coverage dispute. *See Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1175, 1176 (3d Cir. 1990) (observing that Fed. R. Civ. P. 65(a) "does not make a hearing a prerequisite for ruling on a preliminary injunction"). Further, for reasons that follow, the Court finds and concludes that injunctive relief is not warranted given Plaintiff's failure to establish that it will suffer irreparable harm.

### III. FACTUAL FINDINGS

Because a preliminary injunction is an extraordinary remedy, a district court is required to explicitly state the reasons for its ruling on a request for injunctive relief. *See Thomson v. Drummond*, 715 F. App'x 127, 129 (3d Cir. 2017) (citing Fed. R. Civ. P. 52(a)(2) (when "granting or refusing an interlocutory injunction, the court must . . . state the findings and conclusions that support its action.")). The Court of Appeals for the Third Circuit has held that "the Rule 52 requirements must be met even when there has been no evidentiary hearing on the motion."[1] *Bradley*, 910 at 1178. In accordance with Rule 52(a)(2), the Court makes the following factual findings based on the record before it.

Plaintiff did not initially supply any affidavits or other documentation to support its Motion for Preliminary Injunction, but attached the following exhibits to its Complaint: (1) the Policy issued to Plaintiff for the period December 12, 2018 to December 12, 2019; (2) an October/November 2019 email exchange between Plaintiff's counsel and Tim Vandewater, who is a property claims examiner for Defendant, discussing counsel's understanding that Plaintiff would first pay its contractors $121,560.71 and then Defendant would make future payments directly to

---

1   As the Third Circuit further observed, "[a]rguably, factual findings when the court denies a preliminary injunction may serve little purpose when there has been no hearing, but conclusions of law are nonetheless essential and the factual bases on which the conclusions are predicated, whether derived from affidavits or testimony, serve to permit evaluation of the legal conclusions reached by the district court." *Bradley*, 910 F.2d at 1178. Accordingly, for clarity and as required by Rule 52(a)(2), the Court separately outlines herein its factual findings and legal conclusions supporting its decision to deny injunctive relief.

the contractors so that Plaintiff would not need to advance payments; (3) follow-up email correspondence from July 2020 between Plaintiff's counsel and Mr. Vandewater discussing payment issues related to work performed by Plaintiff's contractors and Defendant's continuing evaluation of Plaintiff's claim; and (4) a letter dated September 14, 2020 from Ernest Spader of Spader Suspended Access Consultant LLC to Plaintiff's owner, Craig Pearce, in which Mr. Spader requests payment of an outstanding invoice totaling $88,941.02 for scaffolding equipment it installed at the Spirit Building and indicates that failure to pay by September 21, 2020 will "result in red tagging the entire system(s) for non-usage until this invoice is paid in full."  (*See* Docket Nos. 1-1, Exs. A, B, C and D; 1-2).   If red tagging occurs, Mr. Spader explains that rental charges will continue for the equipment "due to no fault of interruption from [his company]."  (Docket No. 1-1, Ex. D).   Further, Spader will charge "a 10% additional weekly failure to pay penalty" until the outstanding invoices are paid.  (*Id.*).

Defendant submitted four photographs taken by Engle Martin and Associates on August 19, 2020 showing: (1) the left side and front exterior of the Spirit Building with scaffolding; (2) the front (with scaffolding) and right side exterior of the building; (3) the left alley way that was covered; and (4) the rear and left side exterior of the building.   (*See* Docket No. 6-1).

Plaintiff tendered a Declaration by Mr. Spader, who has over thirty years' experience in the field of safety equipment and scaffolding and who contracted with Plaintiff to provide the scaffolding and safety equipment that currently surrounds the Spirit Building.   (Docket No. 7-1, ¶ 1).   According to Mr. Spader, before his company installed overhead protection and safety equipment, debris fell from the top of the Spirit Building onto the sidewalks and streets of Punxsutawney and adjacent buildings.  (*Id.*, ¶ 2).   After Mr. Spader's company installed the overhead protection and safety equipment, additional debris fell from the top of the Spirit

Building, some of which punctured his company's equipment, as shown in photographs attached to his Declaration.  (*Id.*, ¶¶ 4, 7).  Based on Mr. Spader's experience in the industry, he avers that additional debris will fall from the parapet walls because of the wind damage they sustained and that water could infiltrate the walls and freeze if repairs are not completed before winter, causing the potential for additional falling debris, which could kill or injure people below.  (*Id.*, ¶¶ 5-7).  Despite same, if Spader's invoices "continue to be unpaid, [it] will remove all equipment from the Spirit Building, including all overhead protection and safety mitigation equipment and hardware." (*Id.*, ¶ 11).  Mr. Spader notes that fees are associated with dismantling and removing the equipment and any subsequent reinstallation.  (*Id.*).

## IV. LEGAL CONCLUSIONS

Federal Rule of Civil Procedure 65(a) authorizes a district court to grant a preliminary injunction.  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  The Third Circuit Court of Appeals has identified four factors which govern a district court's decision whether to issue a preliminary injunction:

> (1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) [that] the public interest [weighs in favor of granting the injunction].

*Greater Phila. Chamber of Commerce v. City of Philadelphia*, 949 F.3d 116, 133 (3d Cir. 2020).[2] "Generally, the moving party must establish the first two factors and only if these 'gateway

---

[2] Because this case was removed from state court and the Court's jurisdiction is predicated on diversity of citizenship, it bears noting that the Court is to use a federal standard with regard to the preliminary injunction analysis. *See Figueroa v. Precision Surgical, Inc*., 423 F. App'x 205, 207 (3d Cir. 2011) ("Although we apply state law to the substantive issues in this diversity action . . . we utilize a federal standard in examining requests to federal courts for preliminary injunctions.").

factors' are established does the district court consider the remaining two factors." *Id. (*citing *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017)); *see also Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 219 (3d Cir. 2014) ("Absent a showing of irreparable harm, a plaintiff is not entitled to injunctive relief, even if the other three elements are found.").

Critically, the movant must demonstrate that irreparable harm is "***likely***" to occur "in the absence of an injunction," *Winter*, 555 U.S. at 22 (emphasis in original), and "[e]stablishing a ***risk*** of irreparable harm is not enough" to warrant injunctive relief. *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (emphasis added). Therefore, "[a] plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'" *ECRI*, 809 F.2d at 226 (quoting *Continental Group, Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980)). "The 'requisite feared injury or harm must be irreparable—not merely serious or substantial,' and it 'must be of a peculiar nature, so that compensation in money cannot atone for it.'" *Id.* (quoting *Glasco v. Hills*, 558 F.2d 179, 181 (3d Cir. 1977)). "[W]here a possible injury can be measured by a specific number of dollars and consequently has a dollar value, it cannot be said to be irreparable." *Miller v. Am. Tel. & Tel. Corp.*, 344 F. Supp. 344, 349 (E.D. Pa. 1972) (denying preliminary injunction, in part, because the possible injury to the plaintiffs was "measurable in dollars").

To emphasize, "[e]conomic loss does not constitute irreparable harm." *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994). Accordingly, "a preliminary injunction which order[s] the payment of monies where the underlying contract is disputed, misconceives the equitable nature and purpose of an injunctive proceeding." *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1145 (3d Cir. 1982). Where the claim is based on an alleged breach of contract, irreparable harm may be found in two situations:

> (1) where the subject matter of the contract is of such a special nature or peculiar value that damages would be inadequate; or (2) where because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable.

*ECRI*, 809 F.2d at 226 (citing *A.L.K. Corp. v. Columbia Pictures Indus., Inc.*, 440 F.2d 761, 763 (3d Cir. 1971)).

Finally, it is well-established that "[l]ost revenues are a classic economic loss, and can easily be remedied by monetary damages at the end of a trial on the merits." *See Ortho Biotech Prods., L.P. v. Amgen Inc.*, No. 05-4850, 2006 WL 3392939, at *6 (D.N.J. Nov. 21, 2006) (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988) ("The availability of adequate monetary damages belies a claim of irreparable injury.")). As the Third Circuit Court of Appeals has held, even when an action will result in the destruction of a business, a district court still is justified in refusing to grant injunctive relief when the loss is "capable of ascertainment and award at final judgment if [petitioner] prevails." *Figueroa*, 423 F. App'x at 211 (quoting *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989)).

## V.  DISCUSSION

In consideration of these prevailing legal standards, Plaintiff has not shown that it is entitled to a preliminary injunction because it has failed to establish that irreparable harm is likely to occur in this insurance coverage dispute where the possible injury can be measured by an ascertainable dollar amount. *See Winter*, 555 U.S. at 22. Instead, Plaintiff only has identified certain purported risks of potential harm which "[are] not enough" to establish the requisite irreparable harm necessary for entitlement to a preliminary injunction. *See ECRI*, 809 F.2d at 226. To that end, Plaintiff submits that Defendant's "delays expose [it], and members of the public, to significant ***risks*** of irreparable harm." (Docket No. 1-2 at 1) (emphasis added).

According to Plaintiff, "[i]f the repairs are left incomplete, members of the public *risk* being killed or seriously injured." (*Id.*) (emphasis added). Additionally, "[i]f the repairs are left incomplete, falling debris *could* damage [surrounding] buildings." (*Id.* at 2) (emphasis added). Further, if repairs are not completed before winter, Plaintiff "*risks* [additional] property damage to the roof and parapet walls of the Spirit Building." (*Id.*) (emphasis added). In each instance, Plaintiff's assertion of irreparable harm is speculative, as nothing in the record establishes otherwise. As such, Plaintiff has failed to sustain its burden of proving a "clear showing of immediate irreparable injury." *ECRI*, 809 F.2d at 226 (citation omitted).

Plaintiff's speculation about public safety and/or property damage risks appears to be an attempt to convert a contractual dispute about monetary damages into one involving irreparable harm. However, Plaintiff's assertion of irreparable harm is undercut by its request for an immediate award of payment in the amount of $88,941.02, which it claims is owed under the Policy. It bears repeating that "a preliminary injunction which order[s] the payment of monies where the underlying contract is disputed, misconceives the equitable nature and purpose of an injunctive proceeding." *In re Arthur Treacher's*, 689 F.2d at 1145; *see also Miller*, 344 F. Supp. at 349 ("[W]here a possible injury can be measured by a specific number of dollars and consequently has a dollar value, it cannot be said to be irreparable."). Here, Plaintiff does not contend, let alone prove, that irreparable harm can be found because either "the subject matter of the contract is of such a special nature or peculiar value that damages would be inadequate" or "because of some special and practical features of the contract, it is impossible to ascertain the legal measure of loss so that money damages are impracticable." *See ECRI*, 809 F.2d at 226 (citation omitted) (where the claim is based on an alleged breach of contract, irreparable harm may be found in these two situations). Rather, Plaintiff's claims against Defendant in this contract

9

dispute can be litigated to a final determination. As underscored by Plaintiff's demand for payment of a sum certain, any potential harm resulting from Defendant's alleged breach of contract or bad faith can be adequately compensated by money damages.

Finally, the Court notes that irreparable harm is not established by Plaintiff's unsubstantiated assertions that it "cannot afford to complete the repairs" and it "risk[s] losing [its] entire investment in the building." (Docket No. 1-2 at 1, 5). These averments reflect that the issue in this case is financial. As already discussed, given that Plaintiff's alleged injury can be compensated by monetary damages if it ultimately prevails, injunctive relief is not warranted. *See Figueroa*, 423 F. App'x at 211 (quoting *Instant Air Freight*, 882 F.2d at 801) (observing that the district court is justified in refusing to grant injunctive relief, even when an action will result in the destruction of a business, where the loss is "capable of ascertainment and award at final judgment if [petitioner] prevails").

## VI. CONCLUSION

Plaintiff has not met its burden to establish "a clear showing of immediate and irreparable injury." *See ECRI*, 809 F.2d at 226 (citation omitted). Accordingly, Plaintiff's Motion for Preliminary Injunction (Docket No. 1-2) is DENIED.

An appropriate order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:      October 13, 2020

cc/ecf:    All counsel of record