## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CLP ASSOCIATES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-1409 |
| | ) | |
| | ) | |
| SENECA INS. CO., INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff, CLP Associates, LLC, alleges claims against Defendant, Seneca Insurance Company, Inc., for breach of contract and bad faith arising out of an insurance coverage dispute involving property damage to the roof, parapet walls, and parapet wall caps of an insured building. (*See generally* Docket No. 1-1, ¶ 3).  Presently before the Court is Defendant's Motion to Compel Appraisal and Stay Proceeding and materials in support (Docket Nos. 30-32, 36) and its Motion to Extend Fact Discovery Deadline.  (Docket Nos. 37, 39).  Plaintiff opposes both motions.  (Docket Nos. 35, 38).  After consideration of the parties' arguments in light of the prevailing legal standards, and for the following reasons, Defendant's Motion to Compel Appraisal and Stay Proceeding will be granted, and its Motion to Extend Fact Discovery Deadline will be denied as moot.

### I.    Background[1]

Plaintiff made an insurance claim for damage to the roof, parapet walls, and parapet wall

---

[1]    Much of the following factual background is derived from Defendant's proffered Declaration of Summerly Kulik and exhibits attached thereto.  (Docket No. 32).  Plaintiff does not proffer any evidence in opposition to Defendant's motions nor controvert its factual assertions.

caps of its building as a result of a windstorm that occurred on February 24, 2019. (*See* Docket Nos. 1-1, ¶ 3; 32, ¶ 3; 32-2). Within days of the windstorm and upon receipt of Plaintiff's notice of claim, Defendant retained an independent adjuster to investigate the claim and to perform a site visit. (Docket Nos. 32, ¶ 3; 32-2). Defendant also retained an engineering firm to determine the cause and extent of the damage. (Docket Nos. 32, ¶ 4; 32-3). Defendant's engineering firm completed its own site visit and concluded that the roof sustained damage caused by the windstorm, but that the parapet cap tiles, parapet walls, and brick veneer were not damaged by the windstorm. (Docket No. 32-3 at 7). Consequently, on April 15, 2019, Defendant tendered payment to Plaintiff in the amount of $39,660.71 for the uncontested covered damages to the roof while informing Plaintiff that the alleged damage to the parapet cap tiles, parapet walls, and brick veneer was not covered. (Docket Nos. 32, ¶ 5; 32-4).

On April 24, 2019, Defendant invited Plaintiff to submit documentation from its own experts for further review. (Docket Nos. 32, ¶ 6; 32-5). Nearly seven weeks later, on June 11, 2019, Plaintiff furnished a repair estimate with an opinion from a masonry vendor that high winds caused the damage to the roof and parapet walls. (Docket No. 32-5).

On June 19, 2019, Defendant retained a second engineering firm to determine the extent of any additional damage caused by the windstorm. (Docket Nos. 32, ¶ 7; 32-6). After conducting a site inspection within days of being retained, on or about June 25, 2019, this second engineering firm opined that wind forces displaced approximately twenty terra cotta cap tiles and the top course of brick masonry along approximately twenty linear feet of parapet wall, but that any additional parapet wall repairs were not necessitated by the windstorm. (Docket Nos. 32, ¶ 8; 32-7). The next day, on June 26, 2019, Defendant notified Plaintiff that it was conducting additional investigation surrounding the claim and requested Plaintiff to provide certain documentation,

including a pre-purchase inspection report.  (Docket Nos. 32, ¶ 9; 32-8).  Yet, despite multiple requests, Plaintiff still had not supplied the requested information as of August 21, 2019, which prompted Defendant to inform Plaintiff that it could not take any further action under the applicable insurance policy until Plaintiff supplied the pre-purchase inspection report, a detailed contractor's estimate, and any additional information or documentation that could assist in resolving the claim.  (Docket Nos. 32, ¶¶ 10-12; 32-9; 32-10; 32-11).  Plaintiff ultimately supplied the requested inspection report on September 6, 2019.  (Docket Nos. 32, ¶ 13; 32-12).

On October 25, 2019, Defendant tendered an additional payment to Plaintiff in the amount of $76,900 (for a total aggregate amount of $116,560.71), which sum constitutes the "undisputed actual cash value of additional loss."  (Docket Nos. 32, ¶ 14; 32-13).  Defendant transmitted a letter with this payment stating:

> Please note that the insured can not [sic] file a claim until all the damaged property has been replaced and the costs including the deductible have exceeded the [Actual Cash Value] amount of loss. The insured will be required to provide evidence of such replacement and the amounts actually and necessarily expended for same by way of cancelled checks.

(Docket Nos. 32, ¶ 14; 32-13).  Notably, Plaintiff executed a Sworn Statement in Proof of Loss for these payments on November 19, 2019.  (Docket No. 32-14).

On July 9, 2020, Plaintiff furnished Defendant with a new set of invoices and demanded payment for an additional $93,325.02.  (Docket Nos. 32, ¶ 16; 32-15).  In response, on July 22, 2020, Defendant informed Plaintiff via email, in part:

> There are additional funds available [to you], however as stated in our [October 25, 2019] settlement letter, we need to see canceled checks, along with paid invoices for payments made for the agreed upon repairs.  Please provide that in order for us to start releasing additional funds to [you].
>
> At this time, we are trying to determine what [you are] claiming in

> additional [sic] to what we have already paid for, and whether or
> not these additional costs are warranted.

(Docket Nos. 32, ¶ 17; 32-16).

Then, by letter dated July 27, 2020, Defendant informed Plaintiff that it was investigating these newly submitted invoices and therefore retained another independent adjuster in that regard. (Docket Nos. 32, ¶ 18; 32-17).  Additionally, on September 2, 2020, Defendant notified Plaintiff that it would be conducting an examination under oath on September 15, 2020 and asked Plaintiff to supply certain supporting documents by September 12, 2020.  (Docket Nos. 32, ¶ 19; 32-18).  Plaintiff did not supply the requested documents nor appear for examination under oath, but instead filed this lawsuit on September 16, 2020.[2]  Since then, the parties unsuccessfully attempted mediation on December 17, 2020 and January 19, 2021, (*see* Docket Nos. 18, 21), and Plaintiff propounded interrogatories and document requests and received Defendant's responses to those discovery requests in February 2021.  (*See* Docket No. 37, ¶ 5).

On January 26, 2021, within one week following the parties' unsuccessful mediation, Defendant made a written demand to invoke the appraisal provision of the applicable insurance policy wherein it identified its chosen appraiser and asked Plaintiff to choose its appraiser.  (Docket Nos. 32, ¶ 20; 32-19)).  The appraisal provision of the insurance policy provides as follows:

> 2.      Appraisal
>
> If we and you disagree on the value of the property or the amount of
> loss, either may make written demand for an appraisal of the loss.
> In this event, each party will select a competent and impartial
> appraiser.  The two appraisers will select an umpire.  If they cannot
> agree, either may request that selection be made by a judge of a court
> having jurisdiction. The appraisers will state separately the value of
> the property and amount of loss.  If they fail to agree, they will
> submit their differences to the umpire.  A decision agreed to by any
> two will be binding. Each party will:

---

[2]      The lawsuit was removed to this Court on September 17, 2020.  (Docket No. 1).

a.     Pay its chosen appraiser; and

b.     Bear the other expenses of the appraisal and umpire equally.

(*See* Docket No. 1-1 at 50).

Plaintiff has refused to appoint an appraiser or to otherwise participate in the appraisal process.  Moreover, fact discovery expired on August 23, 2021.  (*See* Docket No. 29).

## II.     Defendant's Motion to Compel Appraisal

Pennsylvania law favors resolution of insurance loss disputes through appraisal.  *Ice City, Inc. v. Ins. Co. of N. Am.*, 314 A.2d 236, 240 (Pa. 1974) ("[C]ontracts providing for appraisal, like those providing for arbitration, 'are valid, enforceable, and irrevocable, save upon such grounds as exist in law or in equity for the revocation of any other type of contract.'  When, as here, the conditions precedent to appraisal are satisfied, . . . appraisal is an entirely appropriate means for settling the dispute, and is indeed the favored practice.") (internal citations omitted).  *See also McGourty v. Pennsylvania Millers Mut. Ins. Co.*, 704 A.2d 663, 664 (Pa. Super. Ct. 1997) (*per curiam*) ("Both the appraisal and arbitration process are intended as alternatives to litigation whereby the parties submit the issues in dispute to an independent counsel for resolution.  The only distinction between arbitration and appraisal is the scope of issues encompassed in each proceeding.").

Here, despite the clear and unambiguous appraisal provision[3] in the parties' insurance contract, Plaintiff has refused to select an appraiser or otherwise participate in the contractual appraisal process.  Plaintiff contends that Defendant waived its appraisal rights by waiting over 23 months to assert them, and that the appraisal process has not yet been triggered because liability remains in dispute.  (*See* Docket No. 35).  The Court disagrees with these contentions.

---

[3]     Defendant is correct that the interpretation of an insurance policy is a question of law to be decided by the Court.  *See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.,* 908 A.2d 888, 897 (Pa. 2006).

According to Plaintiff, Defendant disputes liability regarding multiple issues, thus precluding use of the parties' appraisal provision. To invoke the appraisal provision, Defendant must admit liability and there must be a dispute only as to the amount of the loss. *Ice City,* 314 A.2d at 240. The Court notes that none of Defendant's communications with Plaintiff expressly deny liability, and Defendant made pre-complaint payments to Plaintiff for the full amount set forth in Plaintiff's Sworn Statement in Proof of Loss. (Docket No. 32-14). Then, after receiving Plaintiff's new invoices and demand for additional payment, Defendant informed Plaintiff that "[t]here are additional funds available to [you], . . . [but] we need to see canceled checks, along with paid invoices for payments made for the agreed upon repairs. Please provide that in order for us to start releasing additional funds. . . . At this time, we are trying to determine what [you are] claiming in additional [sic] to what we have already paid for, and whether or not these additional costs are warranted." (Docket Nos. 32, ¶ 17; 32-16). This communication clearly reflects a potential disagreement over the necessary repairs and methods of repair which constitutes a dispute as to the amount of loss, not as to coverage. *See e.g., Williamson v. Chubb Indem. Ins. Co.*, No. 11-cv-6476, 2012 WL 760838, at *4 (E.D. Pa. Mar. 8, 2012).

Plaintiff, however, points to Defendant's numerously pled affirmative defenses in support of its argument that liability,[4] and not merely a disagreement over the value of the loss, remains in dispute. Yet, an insurer's denial of liability, raised for the first time in an answer to a complaint, does not amount to a waiver of the condition precedent to invoking the appraisal provision. *Kester v. State Farm Fire & Cas. Co.*, 726 F. Supp. 1015, 1017-18 (E.D. Pa. 1989).

Plaintiff next contends that Defendant waived its right to the appraisal because it delayed

---

[4]     Plaintiff also contends that an appraisal would only potentially resolve its breach of contract claim but not resolve its declaratory judgment and bad faith claims. The existence of those additional claims has no bearing on whether the parties' agreed upon appraisal provision is appropriate for resolving the disputed amount of loss pertaining to Plaintiff's breach of contract claim.

asking for it.  The parties' insurance policy does not specify a time for requesting an appraisal. When the policy is silent, as here, Pennsylvania law requires that the appraisal demand be made within a reasonable time depending upon the circumstances at the time it was made.  *See Kester*, 726 F. Supp. at 1019 (citing *Lefkowitz v. Hummel Furniture Co.*, 122 A.2d 802, 804 (Pa. 1956) (imposing a reasonable time when contract is silent) and *Keesling v. Western Fire Ins. Co. of Fort Scott, Kansas*, 520 P.2d 622, 626-28 (Wash Ct. App. 1974) (stating that the most decisive circumstances are prejudice resulting from the delay and the breakdown of good-faith negotiations concerning the amount of the loss suffered by the insured)); *see also Hodges v. Pennsylvania Millers Mut. Ins. Co.*, 673 A.2d 973, 975 (Pa. Super. Ct. 1996) (citing *Barr v. Deiter*, 154 A.2d 290, 293 (Pa. Super. Ct. 1959) ("lease designated no specified time and, in the absence of such designation, the option contained therein had to be exercised in a reasonable time considering all the circumstances")).

Here, Plaintiff contends that the twenty-three (23) months between February 24, 2019 when the wind damage occurred, and January 26, 2021 when Defendant demanded the appraisal, constitutes unreasonable delay resulting in a waiver of Defendant's contractual appraisal rights. However, Plaintiff ignores the factual circumstances leading up to Defendant's appraisal demand and thus incorrectly measures the period at issue. The evidentiary record before the Court at this juncture demonstrates that Defendant promptly investigated Plaintiff's claimed property damage and tendered its first payment, in the amount of $39,660.71, within two months of the windstorm, and then tendered a second payment six months later in the amount of $76,900 after receiving long-overdue substantiating documentation from Plaintiff.  Therefore, as of October 25, 2019, Defendant's payments to Plaintiff satisfied the entire amount of loss as reflected in Plaintiff's Sworn Statement in Proof of Loss dated November 19, 2019.  (Docket No. 32-14).

More than seven months later, on July 9, 2020, Plaintiff furnished Defendant with additional invoices and demanded payment for an additional $93,325.02. (Docket Nos. 32, ¶ 16; 32-15). Defendant then set about to investigate these new invoices, but Plaintiff failed to submit to a requested examination under oath or supply substantiating documentation and instead initiated litigation. (Docket Nos. 32, ¶ 19; 32-18). Then, in accordance with this Court's mandatory alternative dispute resolution program, the parties participated in unsuccessful Court-ordered mediation sessions. Defendant demanded the appraisal one week after the parties' breakdown in negotiations at their second mediation session, stating, in pertinent part: "[b]ased upon the significant discrepancy in claim valuations . . . , we believe the best manner in which to resolve these differences is through the appraisal process set forth in the Policy." (Docket Nos. 32, ¶ 20; 32-19 at 2).

Under these circumstances, the period at issue here is not measured from the date of the windstorm, but, at most, from the date Plaintiff demanded payment for additional invoices on July 9, 2020. Even then, during the ensuing six month period, Plaintiff thwarted Defendant's efforts to evaluate those invoices by failing to supply substantiating documentation and failing to appear for examination under oath. Instead, Plaintiff initiated this litigation. Defendant demanded the appraisal within one week of the parties' failed mediation. Accordingly, the true measure here is between one week and six months, which the Court deems reasonable under these circumstances.[5]

Plaintiff contends that it was prejudiced by the timing of Defendant's appraisal demand but

---

[5]    Plaintiff incorrectly relies upon *Hodges* to assert that *Kester* contains an "outdated legal framework" for assessing whether a party's delay in requesting an appraisal waives their right to one. The Pennsylvania Superior Court does nothing in *Hodges* to change the applicable legal framework previously expressed in *Kester*. Rather, *Hodges* merely distinguishes its facts from those in *Kester*. *Hodges*, 673 A.2d at 975. Aside from the unique factual circumstances here, the time lapse in the instant case (ranging from one week to six months) is much more analogous to the eight-month period deemed reasonable in *Kester* than the twenty-three (23) month delay deemed unreasonable in *Hodges*.

fails to establish any such prejudice.  Defendant demanded the appraisal within one week of the failed mediation and two months *before* the Court's initial case management conference and issuance of the its Case Management Order.  (*See* Docket Nos. 28, 29).  When making its appraisal demand, Defendant assured Plaintiff that it was completing its responses to Plaintiff's pending written discovery requests (which it did) and that it was refraining from propounding its own discovery requests "in order to minimize any costs and fees to [Plaintiff] during the appraisal process."  (Docket Nos. 32, ¶ 20; 32-19 at 2).

Thus, neither the timing of Defendant's appraisal demand, nor Plaintiff's institution of suit and consequent expenditure of attorneys' fees, undermines the validity of the parties' agreed upon appraisal provision or its valid use here.  Defendant has not waived its right to invoke it.  *See Kester*, 726 F. Supp. at 1020.  Accordingly, Defendant's Motion to Compel appraisal will be granted.

## III.    Defendant's Motion for Stay

Defendant also seeks to stay the instant proceedings until the appraisal process is complete, pursuant to Section 3 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3, and pursuant to this Court's discretion to stay a civil proceeding.[6]  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Bechtel Corp. v. Local 215, Laborers' Int'l Union of N. Am.*, 544 F.2d 1207, 1215 (3d Cir. 1976).

The FAA creates a "body of federal substantive law of arbitrability, applicable to any

---

[6]       The Court's discretion to stay a matter is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.  Factors to be weighed may include: (1) the plaintiff's interests and the potential prejudice to the plaintiff of a delay; (2) the prejudice to the defendant; (3) the interest of the Court; (4) the interest of third parties; and (5) the interest of the public.  *Int'l Fidelity Ins. Co. v. Podlucky*, Civ. No. 07-0235, 2007 WL 2752139 at *2, *3 (W.D. Pa. Sept. 19, 2007) (citing *Golden Quality Ice Cream Co., Inc. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 55 (E.D. Pa. 1980)); *see also Douglas v. Brookville Area Sch. Dist.*, No. 2:10-cv-1087, 2010 WL 4720852, at *1 (W.D. Pa. Nov. 15, 2010) (providing similar factors).

arbitration agreement within [its] coverage." *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 3 of the FAA provides that a court ". . . *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3 (emphasis added). Here, Defendant urges the Court to stay these proceedings, contending that the parties' contractual appraisal provision falls within the FAA's meaning of "arbitration" for the purpose of applying its stay provision found at 9 U.S.C. § 3. *See* Docket No. 31 at 14-15 (citing *Ori v. Am. Family Mut. Ins. Co.*, No. CV-2005-697-PHX-ROS, 2005 WL 3079044, at *4 (D. Ariz. 2005)).

Courts look to applicable state law to discern whether an appraisal falls within the FAA's undefined meaning of "arbitration." *See Hartford Lloyd's Ins. Co. v. Teachworth,* 898 F.2d 1058, 1062 (5th Cir. 1990) (applying Texas law to exclude appraisals from the FAA); *Wasyl, Inc. v. First Boston Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987) (applying California law to include appraisals in the definition of an agreement to arbitrate). Here, the Pennsylvania Supreme Court equates appraisal with arbitration for purposes of enforceability, and notes that "settlement of disputes by arbitration or appraisal is the approved public policy of the Commonwealth." *Ice City*, 314 A.2d at 241.

Accordingly, Section 3 of the FAA necessitates that Plaintiff's breach of contract claim be stayed pending the prompt determination of the amount of loss pursuant to the parties' agreed upon appraisal process. The parties shall complete the appraisal process within sixty (60) days and file a joint report on the docket upon completion thereof. This deadline will only be extended for good cause. The remainder of Plaintiff's claims shall also be stayed for a limited time in accordance with the Court's discretion because doing so will not pose an undue burden or prejudice on either of the parties but will support the Court's interest in the efficient adjudication of the case while

upholding the parties' and the public's interests in the settlement of disputes by arbitration or appraisal. *Moses H. Cone*, 460 U.S. at 24; *Ice City*, 314 A.2d at 241.

IV.    **Defendant's Motion to Extend Fact Discovery Deadline**

Finally, Defendant moves to extend the fact discovery deadline, which expired on August 23, 2021, by an additional 180 days.  Plaintiff opposes Defendant's requested extension but alternatively proposes a shorter extension of 45 days.  Defendant's request to extend the fact discovery deadline is moot, given the Court's decision to stay the proceedings pending completion of the appraisal process.  After the appraisal process is complete, the Court will convene a status conference to discuss any outstanding discovery and other case management needs at that juncture.

V.    **Conclusion**

For the reasons set forth herein, Defendant's Motion to Compel Appraisal and Stay Proceeding (Docket No. 30) is granted, and its Motion to Extend Fact Discovery Deadline (Docket No. 37) is denied as moot.

An appropriate Order follows.

*W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:   August 27, 2021


cc/ecf:  All counsel of record